Nathan R. Ring
Nevada State Bar No. 12078
Monique N. Rodriguez
Nevada State Bar No. 16974
**STRANCH, JENNINGS & GARVEY, PLLC**
3100 W. Charleston Boulevard, Suite 208
Las Vegas, NV 89102
Telephone: (725) 235-9750
lasvegas@stranchlaw.com

*Counsel for Plaintiff and the Proposed Class*

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHELLE MCQUINN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>FIESTA INSURANCE FRANCHISE CORPORATION d/b/a FIESTA INSURANCE,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Michelle McQuinn ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this class action Complaint against Defendant Fiesta Insurance Franchise Corporation d/b/a Fiesta Insurance ("Fiesta" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the highly sensitive personal information of Plaintiff and the Class.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

2. Defendant operates as a multi-state franchise network, brokering insurance policies from third-party carriers and, through its local storefronts, providing tax-preparation services directly to consumers.[1]

3. As a condition of obtaining insurance and tax-preparation services from Defendant, consumers must entrust Defendant with a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information"), which Defendant then stores on its computer systems. But Defendant lost control of that Private Information when cybercriminals infiltrated its insufficiently protected network in a data breach (the "Data Breach").

4. Given that it remains unknown precisely how long the cybercriminals had access to Defendant's network before the intrusion was discovered, it is likely that Defendant lacked the monitoring, alerting, and data-loss-prevention tools necessary to detect, stop, or mitigate the breach in a timely manner—thereby allowing cybercriminals unrestricted access to its consumers' Private Information.

5. On information and belief, cybercriminals were able to infiltrate Defendant's systems because Defendant neither adequately trained its employees on cybersecurity nor maintained reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendant's shortcomings left the Class's Private Information vulnerable and made its consumers easy marks for cybercriminals.

6. Plaintiff is a victim of the Data Breach, and she brings this class action on behalf of herself and all others harmed by Defendant's misconduct. Because of Defendant's failures,

[1] *About Fiesta Insurance and Tax Services*, FIESTA FRANCHISE CORPORATION, https://www.fiestafranchise.com/about-fiesta/ (last visited July 16, 2026).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Plaintiff and the Class have suffered a severe invasion of privacy and other damages, and must now face a substantially increased risk of identity theft and financial fraud for years to come.

7. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before the Data Breach, Defendant's consumers' private information was exactly that—private. It is not anymore; it is now forever exposed and insecure.

## PARTIES

8. Plaintiff Michelle McQuinn is a natural person and a citizen of Winton, California. She is domiciled in California, where she intends to remain.

9. Defendant Fiesta is a foreign corporation formed in Delaware, with its principal place of business at 7670 W Lake Mead Blvd #225, Las Vegas, Nevada 89128.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. And there are over 100 putative Class Members.

11. This Court has personal jurisdiction over Defendant because it is headquartered in Nevada, regularly conducts business in Nevada, and has sufficient minimum contacts in Nevada.

12. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

## BACKGROUND

***Defendant Collected and Stored the Private Information of Plaintiff and the Class***

13. As referenced above, Defendant operates as a multi-state franchise network that brokers insurance from third-party carriers and, through its local storefronts, directly provides tax-preparation services as well.[2]

14. In the course of that business, Defendant receives and maintains the Private Information of thousands of consumers.

15. In collecting and maintaining that Private Information, Defendant agreed to safeguard it consistent with its own internal policies and with state and federal law—particularly given that Plaintiff and Class Members had themselves taken reasonable steps to secure their Private Information before entrusting it to Defendant.

16. Businesses like Defendant have duties under state and federal law both to protect consumers' Private Information and to notify consumers when that Private Information has been breached.

17. Defendant recognizes as much, declaring in its Privacy Policy that:

a. "We secure information you provide on computer servers in a controlled, secure environment, protected from unauthorized access, use, or disclosure."[3]

b. "We maintain reasonable administrative, technical, and physical safeguards in an effort to protect against unauthorized access, use, modification, and disclosure of Personal Information in our control and custody."[4]

---

[2] *About Fiesta Insurance and Tax Services*, FIESTA FRANCHISE CORPORATION, https://www.fiestafranchise.com/about-fiesta/ (last visited July 16, 2026).

[3] *Privacy Policy*, FIESTA FRANCHISE CORPORATION, https://www.fiestafranchise.com/privacy-policy/ (last visited July 16, 2026).

[4] *Id*.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

c. "In the event we become aware that the security of the Website and Services has been compromised or Users' Personal Information has been disclosed to unrelated third parties as a result of external activity, including, but not limited to, security attacks or fraud, we reserve the right to take reasonably appropriate measures, including, but not limited to, investigation and reporting, as well as notification to and cooperation with law enforcement authorities."[5]

d. "In the event of a data breach, we will make reasonable efforts to notify affected individuals if we believe that there is a reasonable risk of harm to the User as a result of the breach or if notice is otherwise required by law. When we do, we will send you an email."[6]

***Defendant's Data Breach***

18. On or around June 9, 2026, cybercriminals hacked Defendant's network in the Data Breach. [7]

19. Tellingly, Defendant has already admitted, in a notice dated July 13, 2026, that:

a. "On June 9, 2025, Fiesta Insurance learned certain systems within our network environment were affected by a cybersecurity incident."[8]

b. "On June 26, 2026, we determined that the files that were potentially accessed and/or acquired by an unauthorized third-party contained personal information such as full names, addresses, Social Security numbers, date of birth, passport

---

[5] *Id.*
[6] *Id.*
[7] *Fiesta Insurance Franchise Corporation Notice Regarding Data Security Incident*, FIESTA FRANCHISE CORPORATION, https://fiestainsurance.com/notice-of-data-security-incident/ (last visited July 16, 2026).
[8] *Id.*

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

numbers, financial account information, health related financial information, and driver's license numbers. The elements of information vary per individual."[9]

20. In addition, a ransomware-monitoring group published a notice attributing the Data Breach to a cybercriminal group known as "Qilin."[10]

21. On information and belief, Qilin operates a Data Leak Site ("DLS") on the dark web, where it publishes stolen data to pressure breached organizations into paying. On or around June 19, 2025, Qilin posted to its DLS, claiming responsibility for hacking Defendant.[11]

22. Reports indicate that Qilin has leaked 870 GB of sensitive data.[12]

23. This shows that Qilin infiltrated Defendant's computer network, exfiltrated the sensitive Private Information stored there, and published that stolen Private Information on the dark web.

24. As a result of the Data Breach, at least the following categories of Private Information may have been compromised:

a. Full names;

b. Addresses;

c. Social Security numbers;

d. Date of birth;

e. Passport numbers;

f. Financial account information;

g. Health related financial information; and

---

[9] *Id.*
[10] *Fiesta Franchise*, BREACHSENSE, https://www.breachsense.com/breaches/fiesta-franchise-data-breach/ (last visited July 16, 2026).
[11] *Id.*
[12] *Id.*

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

h. Driver's license numbers.

25. The precise number of persons injured remains unclear. But on information and belief, the size of the putative Class is ascertainable from records within Defendant's custody and control, and the Class includes well over one hundred members, including Defendant's consumers.

26. Yet Defendant waited until July 13, 2026 to begin notifying the Class—399 days after the Data Breach was discovered. [13]

27. Defendant thus kept the Class in the dark, depriving Class Members of any timely opportunity to mitigate their injuries.

28. Notably, California law required far swifter notice: Civil Code § 1798.82(a)(2)(A) mandates that notice "shall be made within 30 calendar days of discovery or notification of the data breach."

29. Defendant's inadequate security practices caused the Data Breach in breach of its duties. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information—causing widespread injury and monetary damages.

30. Since the Data Breach, Defendant claims that it "remains fully committed to maintaining the privacy of personal information in our possession, and upon learning of the event, Fiesta Insurance took immediate action to protect the personal information it maintains," and "continually evaluates and modifies its practices to enhance the security and privacy of personal information and has taken measures to augment its existing cybersecurity."[14]

---

[13] *Id.*

[14] *Fiesta Insurance Franchise Corporation Notice Regarding Data Security Incident*, FIESTA FRANCHISE CORPORATION, https://fiestainsurance.com/notice-of-data-security-incident/ (last visited July 16, 2026).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

31. But such bare assurances do nothing to ensure that Plaintiff's and Class Members' Private Information will be protected from further exposure in a subsequent breach.

32. Further, Defendant's own Notice of Data Breach reveals that Defendant cannot—or will not—determine the full scope of the Data Breach, since it remains unable to say precisely what information was taken and when.

33. Defendant, moreover, has done little to remedy the Data Breach.

34. As a result, the sensitive Private Information of Plaintiff and Class Members landed in the hands of cybercriminals, inflicting numerous injuries and significant damages on Plaintiff and Class Members.

***Qilin & the Dark Web***

35. Tellingly, the cybercriminals that obtained Plaintiff's and Class Members' Private Information appear to be the notorious group known as "Qilin."[15]

36. Qilin is a particularly notorious cybercriminal group; as one industry tracker has reported, "in 2025, Qilin became the most active ransomware group in terms of attack counts."[16]

37. As the global cybersecurity firm BlackFog has explained, cybercriminals like Qilin typically exfiltrate private information in a data breach and then "post it on forums on the Dark Web where it will be sold for profit."[17]

---

[15] *Fiesta Franchise*, BREACHSENSE, https://www.breachsense.com/breaches/fiesta-franchise-data-breach/ (last visited July 16, 2026).
[16] *Dark Web Profile: Qilin (Agenda) Ransomware*, SOCRADAR, https://socradar.io/blog/dark-web-profile-qilin-agenda-ransomware/ (last visited July 16, 2026).
[17] Brenda Robb, *After the Data Breach – What Happens to Your Data*, BlackFog (July 27, 2025) https://www.blackfog.com/after-the-data-breach-what-happens-to-your-data/.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

38. Indeed, the Federal Trade Commission has warned that "data stolen from businesses ends up on the dark web where criminals buy and sell it to commit fraud, get fake identity documents, or fund their criminal organizations."[18]

39. On information and belief, the cybercriminals responsible here were particularly sophisticated: they (1) defeated Defendant's data security systems, (2) gained actual access to sensitive data, and (3) successfully exfiltrated that data.

40. The Harvard Business Review has similarly observed that "[c]ybercriminals frequently use the dark web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[19]

41. Thus, on information and belief, the Private Information stolen from Plaintiff and the Class has already been published—or will imminently be published—by cybercriminals on the dark web.

***Plaintiff's Experiences and Injuries***

42. Plaintiff Michelle McQuinn was a customer of Defendant. She had car insurance through Defendant from approximately December 2023 to June 2025.

43. As such, Defendant obtained and maintained Plaintiff's Private Information in the course of its regular business operations.

44. As a result, Plaintiff was injured by the Data Breach.

---

[18] John Krebs, *The dark web: What your business needs to know*, Fed. Trade Comm. (Oct. 17, 2017) https://www.ftc.gov/business-guidance/blog/2017/10/dark-web-what-your-business-needs-know.

[19] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

45. Upon information and belief, at the time of the Data Breach, Defendant maintained Plaintiff's Private Information in its system, and of which Defendant had access to.

46. Plaintiff is very careful about sharing her Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted her Private Information to Defendant had he/she known of Defendant's lax data security policies.

47. In order to obtain insurance services from Defendant, Plaintiff was required to provide her Private Information to Defendant, including among other things, her name, address, Social Security Number, debit card number, and date of birth.

48. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff has spent time dealing with the Data Breach—roughly 2 hours of her valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

49. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors her Private Information multiple times a week and has already spent time dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

50. Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) misuse of Private Information; (ii)

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

spam calls and communications; (iii) invasion of privacy; (iv) theft of her Private Information; (v) lost or diminished value of Private Information; (vi) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) loss of benefit of the bargain; (viii) statutory damages; (ix) nominal damages; and (x) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

51. Plaintiff suffered actual injury from the increase in spam, suggesting that her Private Information has been stolen and is now in the hands of cybercriminals.

52. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

53. Thus, on information and belief, Plaintiff's Private Information has already been published—or will imminently be published—by cybercriminals on the dark web.

54. As a result of the Data Breach and given Defendant's explicit instructions, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

55. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

56. Plaintiff greatly values her privacy, and would not have provided her Private Information, undertaken the services and paid the amounts that she did if she had known that her Private Information would be maintained using inadequate data security systems.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

***Consumers Prioritize Data Security***

57. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[20] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[21]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[22]

c. 89% of consumers stated that "I care about data privacy."[23]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[24]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[25]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[26]

---

[20] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[21] *Id*. at 3.
[22] *Id*.
[23] *Id*. at 9.
[24] *Id*.
[25] *Id*.
[26] *Id*. at 11.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

***Plaintiff and the Proposed Class Suffered Common Injuries and Damages***

58. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members have suffered, and will continue to suffer, damages—including, among others, monetary losses, lost time, anxiety, and emotional distress. They have also suffered, or are at an increased risk of suffering:

a. loss of the opportunity to control how their Private Information is used;

b. diminution in the value of their Private Information;

c. compromise and continued publication of their Private Information;

d. out-of-pocket costs incurred trying to prevent, detect, and recover from identity theft and fraud;

e. lost opportunity costs and wages from time spent mitigating the fallout of the Data Breach, including preventing, detecting, contesting, and recovering from identity theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen Private Information; and

h. continued risk to their Private Information—which remains in Defendant's possession and thus at risk of future breaches so long as Defendant fails to take appropriate measures to protect it.

***Substantially Increased Risk of Identity Theft and Fraud***

59. Because of the Data Breach, Plaintiff and Class Members face a heightened risk of identity theft for years to come.

60. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201 (2013).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

61. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

62. The link between a data breach and the risk of identity theft is simple and well established: criminals steal personal data in order to monetize it, typically by selling the stolen information on the internet black market—the dark web—to other criminals who then use it to commit the variety of identity-theft-related crimes discussed below.

63. The "dark web" is an unindexed layer of the internet accessible only with special software or authentication. Criminals favor it because it affords a degree of anonymity to both visitors and website publishers. Unlike the ordinary, "surface" web, dark web users must already know the address of the site they wish to visit—for instance, the CIA's surface-web address is cia.gov, while its dark-web address is the far less intuitive ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion. That design keeps dark web marketplaces from being easily monitored by authorities or stumbled upon by outsiders.[27][28]

64. The unencrypted Private Information of Plaintiff and Class Members has ended up, or will end up, for sale on the dark web, consistent with hackers' typical modus operandi. That unencrypted, detailed Private Information may also fall into the hands of companies that use it for targeted marketing without Plaintiff's or Class Members' approval, and unauthorized individuals can readily access it.

[27] *What Is the Dark Web?*, EXPERIAN, https://www.experian.com/blogs/ask-experian/what-isthe-dark-web/ (last visited July 9, 2025).
[28] *Id*.

3100 W. Charleston Blvd., #208 Las Vegas, NV 89102
SJG 725-235-9750 lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

65. The theft of Social Security numbers is especially alarming because those numbers cannot easily be replaced: to obtain a new one, a victim must first demonstrate ongoing harm from misuse of the old number—meaning a new SSN is not issued until after the harm has already occurred.

66. In particular, a stolen Social Security number—combined with other Private Information such as name, address, and date of birth—hands cybercriminals a "skeleton key" for rampant fraud and identity theft.

67. For example, cybersecurity expert Jim Stickley told Time Magazine that "[i]f I have your name and your Social Security number, and you haven't gotten a credit freeze yet, you're easy pickings . . . With that, you can do whatever you want . . . You can become that person." Stickley is a "penetration tester" whom businesses employ "to infiltrate their systems in order to find flaws they can fix before the bad guys exploit them."[29][30]

68. There is often a time lag between when personal information is stolen, when it is actually used, and when the victim discovers the misuse. Fraud and identity theft stemming from the Data Breach may go undetected until debt-collection calls begin months or even years later; a victim may not learn her Social Security number was used to file for unemployment benefits until law enforcement notifies her employer of suspected fraud, and fraudulent tax returns are typically discovered only once the victim's authentic return is rejected.

[29] Patrick L. Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME MAGAZINE (Aug. 5, 2019) https://time.com/5643643/capital-one-equifax-data-breach-social-security/.
[30] *Id.*

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

69. On average, consumers take approximately three months to discover that their identity has been stolen and used—and some individuals do not learn of the misuse for up to three years.[31]

70. It is against this backdrop that Plaintiff and Class Members must now live with the knowledge that their Private Information is forever loose in cyberspace, taken by people willing to use it for any number of improper purposes and scams, including selling it on the black market.

71. A person's identity functions much like a puzzle made up of many data points: the more accurate pieces an identity thief collects, the easier it becomes to assume the victim's identity—or to track the victim down for further attacks aimed at gathering the remaining pieces.

72. Armed with nothing more than a name and date of birth, for instance, a data thief can deploy a technique known as "social engineering" to pry loose even more of a victim's identity, such as login credentials or a Social Security number. Social engineering uses previously acquired information to manipulate and trick victims into disclosing further confidential or personal information—through spam calls, texts, or phishing emails, among other means. Data breaches like this one are frequently the launching point for these follow-on, targeted attacks.

73. Identity thieves can likewise use a victim's personal data and Private Information to obtain a driver's license or identification card bearing the victim's name but the thief's photograph; to use the victim's name and Social Security number to claim government benefits; or to file a fraudulent tax return in the victim's name. Thieves may also use that information to

---

[31] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. SYSTEMICS, CYBERNETICS & INFORMATICS 9 (2019) http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

obtain employment, rent housing, or receive medical services as the victim—and some have even given a victim's identity to police during an arrest, resulting in a warrant issued in the victim's name. [32]

74. One well-known example of criminals assembling bits of compromised Private Information into comprehensive dossiers is the "Fullz" package—a shockingly accurate and complete profile of a person. To build one, cybercriminals cross-reference stolen Private Information against unregulated data available elsewhere (such as phone numbers, email addresses, and physical addresses) to assemble a remarkably complete and accurate dossier on an individual. [33]

75. Because Fullz packages exist, the Private Information exposed in the Data Breach can readily be linked to other data about Plaintiff and the Class already available online. So even where the Data Breach itself did not expose emails, phone numbers, or credit card numbers, criminals can still assemble a Fullz package and resell it repeatedly, at a premium, to unscrupulous operators such as scam telemarketers. That is precisely what is happening here, and it is reasonable for any trier of fact—including this Court or a jury—to find that Plaintiff's

---

[32] *Identity Theft and Your Social Security Number,* SOCIAL SECURITY ADMINISTRATION, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf. (last visited July 9, 2025).

[33] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.,* Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm,* KREBS ON SECURITY (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

and Class Members' stolen Private Information is being misused, and that the misuse is fairly traceable to the Data Breach.

76. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, internet-enabled crimes that year reached their highest-ever number of complaints and dollar losses, totaling more than $3.5 billion in losses to individual and business victims. [34]

77. That same report notes that "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Yet Defendant failed to promptly report to Plaintiff and the Class that their Private Information had been stolen. That failure exacerbated Plaintiff's and Class Members' injuries, depriving them of the earliest possible opportunity to protect their Private Information and take other steps to mitigate the harm caused by the Data Breach.

78. Victims of identity theft frequently also suffer embarrassment, blackmail, or harassment—in person or online—and experience financial losses from fraudulently opened accounts or misuse of existing ones.

79. Beyond out-of-pocket expenses that can run into the thousands of dollars, and the emotional toll identity theft exacts, victims often must spend considerable time repairing the damage caused by the theft of their Private Information—correcting fraudulent entries on their credit reports, monitoring those reports for further inaccuracies, closing and reopening bank and credit accounts, and disputing charges with creditors.

---

[34] *2019 Internet Crime Report* (Feb. 11, 2020) FED. BUREAU INTELLIGENCE, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited July 9, 2025).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

80. Complicating matters further, data thieves may wait years before using stolen Private Information, meaning Plaintiff and Class Members will need to remain vigilant for years, if not decades, to come.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

81. Defendant's data-security obligations carried particular weight given the substantial increase in cyberattacks and data breaches in recent years.

82. In 2024 alone, a record 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase over the prior year. [35]

83. Indeed, cyberattacks have grown so common that the FBI and U.S. Secret Service now issue warnings to potential targets so they can prepare. As one report put it, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[36]

84. According to the cybersecurity firm Mimecast, in fact, 90% of healthcare organizations have experienced cyberattacks.[37]

85. This rise in attacks—and the corresponding risk of future ones—was thus widely known, both to the public and to anyone in Defendant's industry, including Defendant itself.

[35] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.
[36] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.
[37] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Sept. 11, 2023).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

***Defendant Could Have Prevented the Data Breach***

86. Data breaches are preventable.[38] Indeed, the American Bar Association published a treatise titled the *Data Breach and Encryption Handbook* wherein the author explained that:

a. "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[39]

b. "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[40]

c. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [41]

***Defendant Failed to Follow FTC Guidelines***

87. The Federal Trade Commission ("FTC") has made clear that data security must factor into every business decision. To that end, the FTC has issued numerous guidelines identifying the best data-security practices that businesses—including Defendant—should employ to guard against unlawful data exposure.

---

[38] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (2012).
[39] *Id.* at 17.
[40] *Id.* at 28.
[41] *Id.*

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

88. In 2016, the FTC updated its guide, Protecting Personal Information: A Guide for Business, setting out the data-security principles and practices businesses must follow. Among other things, the FTC declared that businesses must:[42]

a. safeguard the personal customer information in their possession;

b. properly dispose of personal information no longer needed;

c. encrypt information stored on their computer networks;

d. understand the vulnerabilities in their networks; and

e. implement policies to correct any security problems.

89. The guidelines further recommend that businesses monitor for large transmissions of data leaving the system and maintain a response plan ready to deploy in the event of a breach.

90. The FTC further explains that companies must:

a. avoid retaining information longer than necessary to authorize a transaction;

b. limit employee access to sensitive data;

c. require complex passwords on their networks;

d. employ industry-tested security methods;

e. monitor networks for suspicious activity; and

f. confirm that third-party service providers employ reasonable security measures.

91. The FTC brings enforcement actions against businesses that fail to adequately and reasonably protect customer data, treating the failure to use reasonable and appropriate measures against unauthorized access as an unfair act or practice prohibited by Section 5 of the

---

[42] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

FTC Act, 15 U.S.C. § 45. The resulting orders further clarify the measures businesses must take to satisfy their data-security obligations.

92. In short, Defendant's failure to use reasonable and appropriate measures to protect its consumers' data against unauthorized access constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

93. Businesses like Defendant should, at minimum, implement several well-established best practices, including: employee education; strong passwords; layered security such as firewalls and anti-virus and anti-malware software; encryption; multi-factor authentication; data backups; and limiting which employees may access sensitive data.

94. Additional industry-standard practices include: installing appropriate malware-detection software; monitoring and limiting network ports; securing web browsers and email systems; configuring network infrastructure such as firewalls, switches, and routers; monitoring and protecting physical security systems; safeguarding communication systems; and training staff on these critical points.

95. On information and belief, Defendant failed to implement industry-standard cybersecurity measures and failed to meet the minimum requirements of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC)—both established standards for reasonable cybersecurity readiness.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

96. These frameworks reflect applicable, accepted industry standards, and Defendant's failure to comply with them opened the door to the criminals responsible for the Data Breach.

***Defendant Violated HIPAA***

97. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[43]

98. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information and PHI is properly maintained.[44]

99. The Data Breach resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

---

[43] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[44] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

b. failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

i. failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

100. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

101. Plaintiff brings this class action, individually and on behalf of all members of the following class, under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

> **Nationwide Class:**
> All individuals residing in the United States whose Private Information was compromised in the Data Breach in June 2025, including all those individuals who received notice of the Data Breach.
>
> **California Subclass:**
> All individuals residing in California whose Private Information was compromised in the Data Breach in June 2025, including all those individuals who received notice of the Data Breach.

102. Excluded from the Class are Defendant, its affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

103. Plaintiff reserves the right to amend the class definition.

104. Certifying Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of those claims on a class-wide basis, using the same evidence that would be needed to prove those elements in individual actions.

105. Ascertainability. All proposed Class Members are readily ascertainable from records within Defendant's custody and control.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

106. Numerosity. Class Members are so numerous that joinder of all of them is impracticable. On information and belief, the proposed Class includes at least several hundred members.

107. Typicality. Plaintiff's claims are typical of Class Members' claims, since each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonably delayed notice to affected individuals.

108. Adequacy. Plaintiff will fairly and adequately protect the Class's common interests, which do not conflict with her own, and she has retained counsel experienced in complex class action and data-privacy litigation to prosecute this action on the Class's behalf.

109. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common questions of fact and law that predominate over any questions affecting only individual Class Members, and that a single class-wide proceeding can resolve for everyone. Those common questions include:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant was negligent in maintaining, protecting, and securing Private Information;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's Private Information;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

110. Superiority. A class action is superior to all other available means for fairly and efficiently adjudicating this controversy. Individual Class Members' damages are relatively small compared to the burden and expense that individual litigation against Defendant would demand, making it practically impossible for them to obtain effective redress on their own. Individualized litigation would also increase delay and expense for the parties and the courts alike, and would risk inconsistent or contradictory judgments arising from the same facts. A class action, by contrast, resolves these issues in a single proceeding, achieves economies of scale, allows for comprehensive supervision by one court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

111. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

112. Plaintiff and the Class entrusted their Private Information to Defendant on the premise, and with the understanding, that Defendant would safeguard it, use it only for business purposes, and refrain from disclosing it to unauthorized third parties.

113. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and thereby owed a duty to exercise reasonable care in safeguarding, securing, and protecting that information from compromise, loss, theft, misuse, or disclosure to unauthorized parties.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

114. Defendant owed Plaintiff and Class Members a duty of care because it was foreseeable that Defendant's failure to use adequate, industry-standard data security would compromise their Private Information in a data breach. That foreseeable danger came to pass here.

115. Defendant has full knowledge of the sensitivity of this Private Information and of the types of harm Plaintiff and the Class could and would suffer if it were wrongfully disclosed.

116. Defendant owed these duties to Plaintiff and Class Members because they belong to a well-defined, foreseeable, and probable class of individuals whom Defendant knew, or should have known, would suffer injury-in-fact from its inadequate security practices—particularly since Defendant actively sought out and obtained their Private Information.

117. Defendant owed Plaintiff and Class Members at least the following duties:

a. exercise reasonable care in handling and using the Private Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from data breaches, theft, and unauthorized access;

c. promptly detect attempted unauthorized access;

d. notify Plaintiff and Class Members, within a reasonable time, of any breach affecting the security of their Private Information.

118. Defendant thus owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach—a duty necessary to let Plaintiff and Class Members take appropriate protective measures, remain vigilant against an increased risk of harm, and take other steps to mitigate the harm the Data Breach caused.

119. Defendant also had a duty to exercise appropriate clearinghouse practices, removing Private Information it was no longer required to retain under applicable regulations.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

120. Defendant knew, or reasonably should have known, that failing to exercise due care in collecting, storing, and using Plaintiff's and the Class's Private Information created an unreasonable risk of harm to them—even where that harm came about through the criminal acts of a third party.

121. Defendant's duty to use reasonable security measures arose from the special relationship between Defendant and Plaintiff and the Class—a relationship created when Plaintiff and the Class (or their third-party agents) entrusted Defendant with their confidential Private Information as a necessary part of obtaining Defendant's services.

122. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data-security practices to safeguard Plaintiff's and Class Members' Private Information.

123. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," which the FTC has interpreted and enforced to include a business's failure to use reasonable measures to protect Private Information entrusted to it. The FTC's publications and orders under the Act further inform Defendant's duty to protect Plaintiff's and Class Members' sensitive Private Information.

124. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and by failing to comply with the applicable industry standards described herein. That conduct was particularly unreasonable given the nature and volume of Private Information Defendant had collected and stored, and given the foreseeable—and, as it turned out, realized—consequences of a breach, including the immense resulting damages.

125. Similarly, under HIPAA, Defendant had a duty to follow HIPAA's privacy and security standards to protect Plaintiff's and Class Members' PHI.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

126. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect that PHI and by failing to comply with the applicable regulations described above. Here too, Defendant's conduct was particularly unreasonable given the nature and volume of PHI Defendant collected and stored, and given the foreseeable—and, again, realized—consequences of a breach.

127. Similarly, as described below, Defendant violated its duties under the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, et seq. (the "CCPA"), the Confidentiality of Medical Information Act, Cal. Civ. Code § 56, et seq. (the "CMIA"), the California Customer Records Act, Cal. Civ. Code § 1798.80, et seq. (the "CRA"), and other state data-security laws—each of which constitutes negligence in its own right.

128. The risk that unauthorized persons would attempt to access and misuse the Private Information was entirely foreseeable. Given the vast amounts of Private Information Defendant holds, it was inevitable that unauthorized individuals would attempt—whether through malware or otherwise—to access the databases containing it.

129. Private Information is highly valuable, and Defendant knew, or should have known, both the risks inherent in obtaining, using, handling, emailing, and storing Plaintiff's and Class Members' Private Information, and the corresponding importance of exercising reasonable care in handling it.

130. Defendant improperly and inadequately safeguarded Plaintiff's and the Class's Private Information, deviating from standard industry rules, regulations, and practices in place at the time of the Data Breach.

131. The Data Breach itself is evidence that Defendant breached these duties.

132. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Private Information by:

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both how the Private Information was stored, used, and exchanged, and the personnel responsible for those functions.

133. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing Plaintiff's and Class Members' Private Information—failures that actually and proximately caused the Data Breach and the resulting injury to Plaintiff and Class Members.

134. Defendant further breached its duties by failing to give Plaintiff and Class Members reasonably timely notice of the Data Breach, which actually and proximately caused and exacerbated their resulting harm and injuries-in-fact.

135. Defendant has admitted that Plaintiff's and the Class's Private Information was wrongfully lost and disclosed to unauthorized third parties as a result of the Data Breach.

136. As a direct and traceable result of Defendant's negligence and negligent supervision, Plaintiff and Class Members have suffered, or will suffer, damages—including monetary damages, an increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

137. On information and belief, Plaintiff's Private Information has already been published—or will imminently be published—by cybercriminals on the dark web.

138. Defendant's breach of its common-law duty of reasonable care, and its resulting failures and negligence, actually and proximately caused Plaintiff and Class Members actual, tangible injury-in-fact and damages—including, without limitation, the criminal theft of their Private Information, its improper disclosure, lost benefit of the bargain, diminished value of their Private Information, and lost time and money spent mitigating and remediating the effects of

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Defendant's negligence. These injuries and damages are ongoing, imminent, and immediate, and Plaintiff and Class Members continue to face them.

**<u>SECOND CAUSE OF ACTION</u>**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

139. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

140. As a condition of receiving Defendant's services, Plaintiff and Class Members were required to provide their Private Information to Defendant, and they did so—directly or through Defendant's third-party agents—in exchange for those services.

141. Plaintiff and Class Members reasonably understood that part of what they paid Defendant would fund adequate cybersecurity measures.

142. Plaintiff and Class Members reasonably understood, based on Defendant's duties under state and federal law and its own internal policies, that Defendant would use adequate cybersecurity measures to protect the Private Information it required them to provide.

143. Plaintiff and Class Members accepted Defendant's offer by disclosing their Private Information to Defendant or its third-party agents in exchange for services.

144. In turn, Defendant—through its internal policies—agreed to protect that Private Information and not disclose it to unauthorized persons.

145. In its Privacy Policy, Defendant represented that it had a legal duty to protect Plaintiff's and Class Members' Private Information.

146. Implicit in the parties' agreement was Defendant's obligation to provide Plaintiff and Class Members with prompt and adequate notice of any unauthorized access to, or theft of, their Private Information.

147. Indeed, Plaintiff and Class Members would not have entrusted their Private Information to Defendant absent such an agreement.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

148. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

149. Every contract carries an implied covenant of good faith and fair dealing, requiring the parties to act honestly in the transactions at issue. In performing and discharging their contractual duties, the parties must preserve the spirit of the bargain, not merely its letter—meaning each is obligated to honor the substance of the agreement, not just its form.

150. Subterfuge and evasion breach the duty of good faith even when the actor believes its conduct justified; bad faith can be overt or take the form of mere inaction, and fair dealing can demand more than simple honesty.

151. Defendant materially breached the contracts it entered with Plaintiff and Class Members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Private Information that Defendant created, received, maintained, and transmitted.

152. In these and other ways, Defendant violated its duty of good faith and fair dealing.

153. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries, as detailed above.

154. On information and belief, Plaintiff's Private Information has already been published—or will imminently be published—by cybercriminals on the dark web.

155. Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**<u>THIRD CAUSE OF ACTION</u>**
**Invasion of Privacy—Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Class)**

156. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

157. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

158. Defendant owed a duty to its consumers, including Plaintiff and the Class, to keep this information confidential.

159. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' Private Information is highly offensive to a reasonable person.

160. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

161. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

162. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

163. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

164. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

165. As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

166. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

167. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

168. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

169. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

**<u>FOURTH CAUSE OF ACTION</u>**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

170. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

171. This claim is pleaded in the alternative to the breach of implied contract claim.

172. Plaintiff and Class Members conferred a benefit on Defendant, which profited both from (1) using their Private Information to provide services, and (2) accepting their payment.

173. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

174. Plaintiff and Class Members reasonably understood, based on Defendant's duties under state and federal law and its own internal policies, that Defendant would use adequate cybersecurity measures to protect the Private Information it required them to provide.

175. Defendant enriched itself by pocketing the costs it should reasonably have spent on data-security measures to secure Plaintiff's and Class Members' Private Information.

176. Rather than provide the reasonable security and retention policies that would have prevented the Data Breach, Defendant chose to sidestep its data-security obligations at Plaintiff's and Class Members' expense, opting for cheaper, ineffective measures instead. Plaintiff and Class Members suffered as a direct and proximate result of that failure.

177. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of (1) Plaintiff's and Class Members' Private Information, and (2) their payments, given Defendant's failure to adequately protect that Private Information.

178. Plaintiff and Class Members have no adequate remedy at law.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

179. Defendant should be compelled to disgorge, into a common fund for the benefit of Plaintiff and Class Members, all unlawful or inequitable proceeds it received as a result of its misconduct.

**<u>FIFTH CAUSE OF ACTION</u>**
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

180. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

181. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

182. Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), the Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*. (the "CMIA"), the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq*. (the "CRA"), and other state data security laws.

183. Defendant stored the Private Information of Plaintiff and the California Subclass in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the California Subclass's Private Information secure to prevent the loss or misuse of that Private Information.

184. Defendant failed to disclose to Plaintiff and the California Subclass that their Private Information was not secure. However, Plaintiff and the California Subclass were entitled to assume, and did assume, that Defendant had secured their Private Information. At no time were Plaintiff and the California Subclass on notice that their Private Information was not secure, which Defendant had a duty to disclose.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

185. Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the California Subclass's nonencrypted and nonredacted Private Information.

186. Had Defendant complied with these requirements, Plaintiff and the California Subclass would not have suffered the damages related to the data breach.

187. Defendant's conduct was unlawful, in that it violated the CCPA.

188. Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

189. Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

190. Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting Private Information.

191. Defendant also engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

192. Instead, Defendant made the Private Information of Plaintiff and the California Subclass accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the California Subclass to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

193. As a result of those unlawful and unfair business practices, Plaintiff and the California Subclass suffered an injury-in-fact and have lost money or property.

194. For one, on information and belief, Plaintiff's and the California Subclass's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

195. The injuries to Plaintiff and the California Subclass greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

196. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

197. Therefore, Plaintiff and the California Subclass are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**<u>SIXTH CAUSE OF ACTION</u>**
**Violations of the California Consumer Privacy Act ("CCPA")**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the California Subclass)**

198. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

199. Defendant violated the CCPA by providing notice after 399 days—whereas the CCPA requires disclosure "within 30 calendar days of discovery or notification of the data breach." Cal. Civ. Code § 1798.82(a)(2)(A).

200. Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted Private Information of Plaintiff and the California Subclass. As a direct and proximate result, Plaintiff's and the California Subclass's nonencrypted and nonredacted Private Information was subject to unauthorized access and exfiltration, theft, or disclosure.

201. Defendant is a "business" under the meaning of Civil Code § 1798.140 because Defendant is each a "corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners" that "collects consumers' personal information" and is active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year." Civ. Code § 1798.140(d).

202. Plaintiff and California Subclass Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continue/continues to hold Private Information, including Plaintiff's and California Subclass Members' Private Information. Plaintiff and California Subclass Members have an interest in ensuring that their Private Information is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

203. Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believe/believes such cure is not possible under these facts and circumstances—then Plaintiff intend/intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

204. As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

205. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

**SEVENTH CAUSE OF ACTION**
**Violation of the California Customer Records Act**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

206. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

207. Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, ***or*** is reasonably believed to have been, acquired by an unauthorized person." *Id* (emphasis added).

208. The Data Breach constitutes a "breach of the security system" of Defendant.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

209. An unauthorized person acquired the personal, unencrypted information of Plaintiff and the California Subclass.

210. Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the California Subclass but waited approximately 399 days to notify them. Given the severity of the Data Breach, 399 days was an unreasonable delay.

211. Defendant's unreasonable delay prevented Plaintiff and the Class from taking appropriate measures to protect themselves against harm.

212. Because Plaintiff and the California Subclass were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

213. Plaintiff and the California Subclass are entitled to equitable relief and damages in an amount to be determined at trial.

## <u>EIGHTH CAUSE OF ACTION</u>
**Violation of the Confidentiality of Medical Information Act**
**Cal. Civ. Code §§ 56, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

214. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

215. Under California's Confidentiality of Medical Information Act ("CMIA"), "persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved . . . [and it] is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information. Cal Civ Code Div. 1, Pt. 2.6.

216. Furthermore, "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons,

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal Civ Code § 56.101(a).

217. And "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided[.]" Cal Civ Code § 56.101(a).

218. Thus, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her[.]" Cal Civ Code § 56.36(b).

219. Here, Defendant is subject to the CMIA because Defendant is a provider of health care. And Defendant created, maintained, preserved, stored, abandoned, destroyed, and/or disposed of medical information regarding Plaintiff and the California Subclass.

220. But Defendant was negligent because it failed to take reasonable precautions to ensure its data systems were protected. As a result of Defendant's negligence, an unauthorized third-party viewed and obtained the medical information of Plaintiff and the California Subclass.

221. As such, Defendant is therefore liable for damages in an amount to be determined at trial, but not less than the statutorily provided nominal damages of $1,000 for each class member.

**<u>NINTH CAUSE OF ACTION</u>**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

222. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

223. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

224. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

225. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class Members.

226. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

227. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

228. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class Members' injuries.

229. If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

230. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

**<u>TENTH CAUSE OF ACTION</u>**
**Violation of the Nevada Consumer Fraud Act**
**Nev. Rev. Stat. § 41.600**
**(On Behalf of Plaintiff and the Class)**

231. Plaintiff realleges all previous paragraphs as if fully set forth below.

232. The Nevada Consumer Fraud Act, Nev. Rev. Stat. § 41.600 states in relevant part:

233. "An action may be brought by any person who is a victim of consumer fraud."

234. As used in this section, "consumer fraud" means: . . . A deceptive trade practice defined in NRS 598.0915 to 598.0225, inclusive. Nev. Rev. Stat. § 41.600(1) & (2)(e).

235. In turn, Nev. Rev. Stat. § 598.0923(2) provides that "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [f]ails to disclose a material fact in connection with the sale or lease of goods or services." *Id.* Defendant violated this provision because it failed to disclose the material fact that its data security measures were inadequate to reasonably safeguard its customers' Sensitive Information. This is true because, among other things, Defendant was aware of the risks of cyberattacks such as the Data Breach. Defendant knew or should have known that

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

that its data security measures were insufficient to guard against attacks such as the Data Breach. Defendant had knowledge of the facts that constituted the omission. Defendant could have and should have made a proper disclosure prior to providing services to customers by any other means reasonably calculated to inform customers of its inadequate data security measures.

236. Further, Nev. Rev. Stat. § 598.0923(3) provides that "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services." *Id.* Defendant violated this provision for several reasons, each of which serves as an independent basis for violating Nev. Rev. Stat. § 598.0923(3).

237. First, Defendant breached its duty under Nev. Rev. Stat. § 603A.210, which requires any data collector "that maintains records which contain personal information" of Nevada residents to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, . . . use, modification or disclosure." *Id.* Defendant is a "data collector" as defined by Nev. Rev. Stat. § 603A.030. Defendant failed to implement such reasonable security measures, as shown by a system-wide breach of its computer systems during which a threat actor exfiltrated its clients' Sensitive Information. Defendant's violation of this statute was done knowingly for the purposes of Nev. Rev. Stat. § 598.0923(3) because Defendant knew or should have known that it would be a target of cyberattacks such as the Data Breach. Defendant knew or should have known that its data security measures were inadequate to protect against cyberattacks such as the Data Breach.

238. Second, Defendant violated Section 5 of the FTC Act, as alleged above. Defendant knew or should have known that its data security measures were inadequate, violated Section 5 of the FTC Act and failed to adhere to the FTC's data security guidance.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Defendant chose not to follow such guidance and knew or should have known that its data security measures were inadequate to guard against cyberattacks such as the Data Breach. Defendant had knowledge of the facts that constituted the violation. Defendant's violation of Section 5 of the FTC Act serves as a separate actional basis for purposes of violating Nev. Rev. Stat. § 598.0923(3).

239. Defendant engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiff and Class Members.

240. Plaintiff and members of the Class were denied a benefit conferred on them by the Nevada legislature.

241. As a direct and proximate result of the foregoing, Plaintiff and Class Members have suffered injuries including, but not limited to actual damages, and in being denied a benefit conferred on them by the Nevada legislature.

242. As a result of these violations, Plaintiff and Class Members are entitled to an award of actual damages, equitable injunctive relief requiring Defendant to implement adequate data security measures, as well as an award of reasonable attorney's fees and costs. Nev. Rev. Stat. § 41.600(3).

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further unfair and/or deceptive practices;

E. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Date: July 17, 2026

Respectfully submitted,

/s/ *Monique N. Rodriguez*
Nathan R. Ring
Nevada State Bar No. 12078
Monique N. Rodriguez
Nevada State Bar No. 16974
**STRANCH, JENNINGS & GARVEY, PLLC**
3100 W. Charleston Boulevard, Suite 208
Las Vegas, NV 89102
Telephone: (725) 235-9750
lasvegas@stranchlaw.com

Gregory Mullens*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gmullens@stranchlaw.com

**Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC